IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHELLE BURNSIDE PARSONS, et al., | § § § | |
| Plaintiffs, | § § | Civil Action No. 3:12-CV-4071-D |
| VS. | § § | |
| BAYLOR HEALTH CARE SYSTEM, et al., | § § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action, the court must decide whether the removing defendant has carried its heavy burden of proving the improper joinder of all of the Texas citizen defendants. Among the questions presented is whether plaintiffs' alleged failure to comply with the notice and expert report provisions of Texas law establishes that there is no possibility that they can recover against the Texas-citizen physician defendant on their medical negligence claim. Concluding that the removing defendant has failed to establish that the Texas-citizen physician defendant was improperly joined, the court grants plaintiffs' motion and remands this case to state court.

I

Plaintiffs Michelle Burnside Parsons ("Michelle") and Jeffrey Scott Parsons (collectively, "the Parsons") brought this suit in Texas state court against several defendants. As of the filing of the Parsons' second amended petition, the defendants were Stephen J.

Lieman, M.D. ("Dr. Lieman"), American Medical Systems Holdings, Inc. ("AMSH"), American Medical Systems, Inc. ("AMS"), C.R. Bard, Inc. ("Bard"), Columbia Medical Center of Plano Subsidiary, L.P. d/b/a/ Medical Center of Plano ("Columbia"), and Baylor Health Care System and United Surgical Partners International (collectively, "the Supplier Defendants"). The Parsons alleged in their second amended petition that Dr. Lieman surgically placed a Monarc System mesh, manufactured by AMS and AMSH, in Michelle's body to help alleviate symptoms of incontinence and bladder leakage. When the Monarc System mesh eroded and failed, it was necessary for Michelle to undergo corrective surgery during which Dr. Lieman removed the Monarc System mesh and implanted a BARD Avaulta mesh. After months of pain and extreme discomfort, Dr. Lieman removed the BARD Avaulta mesh. It was not possible, however, to remove all of the mesh because it had collapsed and eroded, causing Michelle to experience additional severe, permanent pain and discomfort.

The Parsons sued Dr. Lieman, AMSH, AMS, Bard, Columbia, and the Supplier Defendants in Texas state court. In their second amended petition, they asserted negligence claims against Dr. Lieman and the Supplier Defendants and alleged claims for negligence, design defect, and marketing defect against AMSH, AMS, and Bard. They also brought gross negligence claims against all defendants.[1]

---

[1] Although it is unclear from the second amended petition whether the gross negligence claim is brought against Columbia, *compare* 2d Am. Pet. ¶ VI (appearing to exclude Columbia from the definition of "Supplier Defendants") *with id.* ¶ X (including Supplier Defendants in header but referring to "all Defendants" in body of paragraph), this ambiguity

AMS, with the consent of AMSH and Bard, removed the case to this court based on diversity of citizenship, alleging that the in-state defendants—Dr. Lieman, Columbia, and the Supplier Defendants—were improperly joined.[2]  The Parsons move to remand, contending that the notice of removal was untimely and that they have alleged a valid medical negligence claim against Dr. Lieman.  Dr. Lieman and the Supplier Defendants also move to remand, arguing that the parties are not diverse citizens and that the unanimity of removal requirement has not been met because they oppose removal.

II

For a case to be removed based on diversity jurisdiction, "'all persons on one side of the controversy [must] be citizens of different states than all persons on the other side.'" *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004)).  This means that no plaintiff can be a citizen of the same state as even one defendant.  Moreover, under 28 U.S.C. § 1441(b), a case cannot be removed based on diversity jurisdiction if any properly-joined defendant is a citizen of the state in which the action is brought (here, Texas).

"The doctrine of improper joinder . . . entitle[s] a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'"  *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).  "When a defendant removes a case to

---

is irrelevant for purposes of this decision.

[2]Dr. Lieman, Columbia, and the Supplier Defendants are all Texas citizens.  AMSH and AMS are citizens of Delaware and Minnesota, and Bard is a citizen of New Jersey.

federal court on a claim of improper joinder [of an in-state defendant], the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper." *Id*. at 576.  Improper joinder is established by showing that there was either actual fraud in the pleading of jurisdictional facts or that the plaintiff is unable to establish a cause of action against the non-diverse defendant in state court. *Id.* at 573 (citing *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).

Under the second alternative—the one at issue in this case—the test for improper joinder "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id*.  The court must "evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff." *Guillory v. PPG Indus., Inc*., 434 F.3d 303, 308 (5th Cir. 2005) (internal quotation marks and citation omitted).  Thus "[t]he party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Smallwood*, 385 F.3d at 574.

There are two "proper means for predicting whether a plaintiff has a reasonable basis of recovery under state law." *Id*. at 573.

> The court may conduct a [Fed. R. Civ. P.] 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can

survive a Rule 12(b)(6) challenge, there is no improper joinder.

*Id.* (footnote omitted). In cases where "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id*. Although this is a matter for the court's discretion, "a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id*. at 573-74. The court is not permitted to "mov[e] . . . beyond jurisdiction and into a resolution of the merits." *Id*. at 574.

### III

The court turns to plaintiffs' second amended petition to determine whether AMS has satisfied its heavy burden of establishing the improper joinder of Dr. Lieman.[3]

### A

The Parsons bring a medical negligence claim against Dr. Lieman. Under Texas law, the elements of a medical negligence claim are: "'(1) a duty to conform to a certain standard of care; (2) a failure to conform to the required standard; (3) actual injury; and (4) a causal connection between the conduct and the injury.'" *Quilé v. Hill-Rom Co.*, 2012 WL 5439904, at *1 (N.D. Tex. Nov. 7, 2012) (Fitzwater, C.J.) (quoting *Methodist Hosp. v. German*, 369 S.W.3d 333, 338 (Tex. App. 2011, pet. filed)). The Parsons allege that Dr. Lieman failed to conform to the required standard of care by (1) failing to confirm that Michelle was a

---

[3]The court need not address whether there is a possibility of recovery by the plaintiffs against Columbia or the other in-state Supplier Defendants.

suitable candidate for transvaginal mesh implantation surgery, (2) failing to adequately disclose the risks and benefits and alternatives to treatment with the mesh, and (3) failing to disclose that the mesh products in question never went through a full approval process before the Food and Drug Administration ("FDA") and, therefore, were not suitable for use in a non-sterile environment.  They also assert that Dr. Lieman's failure to conform to the required standard of care in assessing the suitability of the mesh and the alternatives thereto and in acquiring true informed consent from Michelle resulted in the severe and permanent injuries that Michelle suffered.

B

Under *Smallwood* the court first applies a Rule 12(b)(6)-type analysis to the Parsons' medical negligence claim against Dr. Lieman, construing the factual allegations and drawing reasonable inferences in their favor.  Because when they draft their pleadings "state court plaintiffs should not be required to anticipate removal to federal court, the court assesses the sufficiency of the factual allegations of [the] complaint under Texas' notice pleading standard." *Warren v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 4133377, at * 4 (N.D. Tex. Aug. 29, 2008) (Fitzwater, C.J.) (collecting cases).  Under the Texas Rules of Civil Procedure, a petition shall contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." Tex. R. Civ. P. 47(a).  "That an allegation be . . . of legal conclusion shall not be grounds for objection when fair notice to the opponent is given by the allegations as a whole." Tex. R. Civ. P. 45(b).  Texas' "fair notice" pleading standard

"looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant at trial." *Penley v. Westbrook*, 146 S.W.3d 220, 232 (Tex. App. 2004), *rev'd on other grounds*, 231 S.W.3d 389 (Tex. 2007); *see also Green Tree Acceptance, Inc. v. Pierce*, 768 S.W.2d 416, 421 (Tex. App. 1989, no writ) (describing "Texas' traditionally liberal pleading principles").

As described above, the Parsons allege that Dr. Lieman, a medical doctor, breached his duty to conform to the required standard of care by failing to confirm that Michelle was a suitable candidate for transvaginal mesh implantation surgery, by failing to adequately disclose the risks and benefits and alternatives to treatment with the mesh, and by failing to disclose that the mesh products in question never went through a full approval process before the FDA and, therefore, were not suitable for use in a non-sterile environment. They assert that Michelle has suffered severe, permanent pain and discomfort, and they aver that Dr. Lieman's failure to comply with the standard of care in these respects "led to the severe and permanent injuries suffered by [Michelle]." 2d Am. Pet. at ¶ V. In other words, they have pleaded that Michelle has suffered an injury and that there is a causal connection between Dr. Lieman's failure to comply with the relevant standard of care and the injuries suffered.

Considering the Parsons' allegations as a whole regarding Dr. Lieman, the court holds that they have at least stated a claim against him for medical negligence under Texas law. AMS has therefore failed to meet its heavy burden of establishing that there is no possibility of recovery by plaintiffs against Dr. Lieman, i.e., that there is no reasonable basis for the

court to predict that plaintiffs might be able to recover against Dr. Lieman.

C

AMS argues there is no reasonable basis for the court to predict that the Parsons will recover against Dr. Lieman because they have failed to allege in their petition that they have fully complied with the notice provisions of Tex. Civ. Prac. & Rem. Code Ann. § 74.051(b) (West 2011). AMS also contends that the Parsons have failed to provide the expert reports required by Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West 2011).

Tex. Civ. Prac. & Rem. Code Ann. § 74.051(a) requires that a plaintiff who asserts a health care liability claim must give written notice of the claim to each physician or health care provider against whom the claim is being made at least 60 days before filing suit based on the health care liability claim. Section 74.051(b) provides:

> In such pleadings as are subsequently filed in any court, each party shall state that it has fully complied with the provisions of this section and Section 74.052 and shall provide such evidence thereof as the judge of the court may require to determine if the provisions of this chapter have been met.

*Id.* And Tex. Civ. Prac. & Rem. Code Ann. § 74.351 requires that a health care liability claimant provide the defendant an expert report within 120 days after filing the petition.

The court concludes that neither defect is sufficient to establish improper joinder. Assuming *arguendo* that AMS can meet its heavy burden to show improper joinder based on matters outside the Parsons' second amended petition,[4] "[i]t is well-settled . . . that a

---

[4]Consideration of matters outside the pleadings via a summary inquiry is procedurally proper where "a plaintiff has stated a claim, but has misstated or omitted discrete facts that

plaintiff's failure to comply with § 74.051 does not bar recovery against the defendant." *Everett v. Merck & Co.*, 2006 WL 3302527, at *2 n.2 (S.D. Tex. Nov. 13, 2006) (citing *Schepps v. Presbyterian Hosp. of Dall.*, 652 S.W.2d 934, 938 (Tex. 1983)); *see also Rice v. Pfizer, Inc.*, 2006 WL 1932565, at *3 (N.D. Tex. July 7, 2006) (Lynn, J.) ("Compliance with [§ 74.051] is mandatory; however, failure to comply will not result in dismissal of the claim."). And although the Parsons' failure to serve Dr. Lieman with the statutorily-required expert report could result in dismissal if Dr. Lieman sought dismissal on this basis,[5] "the mere possibility of dismissal is not enough to prove [improper] joinder." *Garcia v. Sandoz Inc.*, 2010 WL 1790176, at *3 (S.D. Tex. Apr. 30, 2010); *see also Sauceda v. Pfizer, Inc.*, 2006 WL 3813777, at *2 n.3 (S.D. Tex. Dec. 26, 2006) (noting that because statute is clear that case will be subject to dismissal "on the motion of the affected physician," Tex. Civ. Prac. & Rem. Code Ann. § 74.351, and because there had been no such motion in case, plaintiff's medical malpractice claim was still viable, thus precluding finding of improper joinder). To meet its heavy burden, AMS must "demonstrate[] that there is *no possibility* of recovery by the plaintiff against an in-state defendant." *Smallwood*, 385 F.3d at 573 (emphasis added).

---

would determine the propriety of joinder." *Smallwood*, 385 F.3d at 573.

[5]Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) provides for dismissal of a claim against a physician or health care provider "*on the motion of the affected physician or health care provider*," if the plaintiff fails to comply with the expert report requirements. *Id.* (emphasis added).

D

Because AMS has failed to meet its heavy burden of establishing the improper joinder of Dr. Lieman, a Texas-citizen defendant, the court grants plaintiffs' motion to remand. The court need not address whether the other in-state defendants—Columbia or the Supplier Defendants—have been improperly joined. And because the court is granting the Parsons' motion to remand, it need not address the motions to remand filed by Dr. Lieman, Columbia, or the Supplier Defendants.

\* \* \*

For the foregoing reasons, the court holds that AMS has failed to satisfy its heavy burden of establishing that Dr. Lieman—an in-state defendant—was improperly joined. The court grants plaintiffs' October 17, 2012 motion to remand because the court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). This action is remanded to the 95th Judicial District Court of Dallas County, Texas. The clerk shall effect the remand in accordance with the usual procedure.

**SO ORDERED.**

November 19, 2012.

SIDNEY A. FITZWATER
CHIEF JUDGE